NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC 12-595 consolidated with JAC 12-596


STATE IN THE INTEREST OF D.P.M., ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 23336 C/W 24283
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and J. David Painter, Judges.


AFFIRMED.


Evelyn M. Oubre
522 Clarence Street
Lake Charles, LA 70602
(337) 436-0337
COUNSEL FOR APPELLANT:
    A. M. M.

James Wade Smith
P. O. Box 1706
Lake Charles, LA 70602
(337) 436-8424
COUNSEL FOR APPELLEE:
    M. W.

**Thomas Walter Sanders  Jr.**
**Louisiana Department of Children and Family Services**
**4250 5th Avenue**
**Lake Charles, LA 70607**
**(337) 475-3032**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana Department of Children and Family Services**

**Amy E. McGray**
**One Lakeshore Dr., Suite 1585**
**Lake Charles, LA 70601**
**COUNSEL FOR APPELLEE:**
    **D. P. M.**

**EZELL, Judge.**

A.M.M. appeals the decision of the trial court terminating her parental rights and certifying her child, D.P.M, for adoption. For the following reasons, we affirm the decision of the trial court.

D.P.M. was born on February 28, 2008, to A.M.M. The child was removed from his mother's care on May 28, 2010, pursuant to an order issued by the trial court below. That day, A.M.M. left D.P.M. at daycare and was subsequently hospitalized pursuant to a Physician's Emergency Commitment for mental health issues. A Petition for Certification for Adoption and Termination of Parental Rights was filed by the Department of Children and Family Services (DCFS) on August 30, 2011, alleging that the mother had substantially failed to comply with her case plan for reunification with the child. Namely, the petition alleged that A.M.M. failed to establish safe housing for D.P.M.; that she did not have sufficient income to support D.P.M. and has failed to pay court-ordered child support for more than six months; that she tested positive for cocaine and failed to complete substance abuse services provided to her; and that A.M.M. failed to obtain the required mental health care and parenting education. Trial was held on March 12, 2012. The trial court found that A.M.M. had failed to comply with her case plan and that there was no reasonable expectation of improvement. Finding that termination was in the best interest of D.P.M., the trial court terminated A.M.M.'s parental rights to the child. From that decision, A.M.M. appeals.

A.M.M. asserts as her sole assignment of error that the trial court erred in finding that the DCFS had met its burden of proof for termination. We disagree.

Louisiana Children's Code Article 1015 provides the grounds for termination of parental rights. DCFS's petition for termination of parental rights alleged that

termination was appropriate pursuant to La.Ch.C. arts. 1015(4), 1015(5), and 1036. The portion of La.Ch.C. art. 1015 relevant to this matter lists the following as grounds for termination:

> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> (a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code Article 1036 provides, in pertinent part:

> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

2

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The Louisiana Supreme Court has stated the following relative to the termination of parental rights:

> An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. *State ex rel. K.G.* 02–2886, p. 4 (La.3/18/03), 841 So.2d 759, 762. This court has repeatedly set forth the concerns regarding the involuntary termination of parental rights by OCS, as follows:
>
> > In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in

3

terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

The State's parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.

Title X of the Children's Code governs the involuntary termination of parental rights. La. Child. Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground, La. Child. Code art. 1015, but the judge must also find that the termination is in the best interest of the child. La. Child. Code. art. 1039. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. La. Child. Code art. 1035(A).

*Id.* at 4–5, 841 So.2d at 762–63 (*citing State in the Interest of J.A.,* 99–2905 (La.1/12/00), 752 So.2d 806, 810–811; *State ex rel. C.J.K.,* 00–2375 (La.11/28/00), 774 So.2d 107) (citations omitted).

As revealed by the above quotation, a court considering a petition to terminate parental rights must make two findings: (1) that OCS established one of the enumerated grounds for termination set forth in La. Ch.Code art. 1015 by clear and convincing evidence, and (2) that termination is in the best interest of the child.

4

*State ex rel. D.L.R.*, 08-1541, pp. 11-12 (La. 12/12/08), 998 So.2d 681, 687-88.

In this case, we find that the trial court below properly made the two required findings. A.M.M. had roughly twenty-two months from the time her child was taken to the date of trial to comply with her case plan, almost twice the amount of time listed under La.Ch.C. art. 1015(5). And yet, even with the near extra year, she has failed to complete any of her plan, except for obtaining employment. A.M.M. never maintained housing stability, having at least six addresses since D.P.M. was removed from her custody. She has not completed any of the substance abuse treatment required of her. She has not shown that she has addressed her mental issues, failing to take medications for diagnosed bipolar disorder. Because she has not completed her mental health or drug therapy, she could not even begin the parenting classes that were required of her. She has not paid any child support for D.P.M. in the time he has been out of her care. She was arrested in Texas in 2011 for identity fraud and incarcerated there for roughly one month. Most damningly, from the time of her arrest in July 2001 until trial in February 2012, she had not seen or communicated with D.P.M. at all. Moreover, she was unable to provide a reason for the lack of communication.

The record before this court is filled with a pattern of behavior which indicates A.M.M.'s inability to comply with the requirements of her case plan, and A.M.M. has offered nothing to indicate that this pattern could be reasonably expected to change. It is clear that the DCFS has established grounds for termination, and the trial court did not err in finding termination to be appropriate. Moreover, D.P.M. has been placed with A.M.M.'s sister and, by all accounts, was doing very well in his new home. A.M.M.'s sister and her husband have indicated a desire to adopt the child. It is clear

from the record that D.P.M.'s best interest lies in termination. We can find no error in the trial court's determination.

For the above reasons, the decision of the trial court is hereby affirmed. Costs of this appeal are assessed against A.M.M.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules–Courts of Appeal. Rule 2-16.3.